636 So.2d 299 (1994)
STATE of Louisiana
v.
Aaron Devon PITTMAN.
No. KA 930892.
Court of Appeal of Louisiana, First Circuit.
April 8, 1994.
*300 William J. Burris, Washington Parish Dist. Atty., Franklinton and William R. Campbell, Jr., New Orleans, for appellee, State.
James Looney, Covington, for appellant, Aaron Devon Pittman.
Before CARTER, GONZALES and WHIPPLE, JJ.
GONZALES, Judge.
The defendant, Aaron Devon Pittman, was charged by grand jury indictment with second degree murder, in violation of La.R.S. 14:30.1. He pled not guilty, and after trial by jury, was found guilty as charged. The defendant received the mandatory sentence of life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence. He has appealed, alleging two assignments of error, as follows:
1. The evidence was insufficient to support a conviction of second degree murder because the defendant acted in self-defense.
2. The evidence was insufficient to support a conviction of second degree murder *301 because the defendant acted under provocation sufficient to constitute manslaughter.

FACTS:
At approximately 1:00 a.m. on July 5, 1992, four college students, Robert Mixon, Jr., Herbert Dicharry, III, Traci Lomzenski, and Edward Busby were on their way to a party when they observed two black males fighting in a yard near the intersection of Sullivan Drive and Dolly Avenue in Bogalusa, Louisiana. The four students were riding in a vehicle driven by Mixon. Mixon pulled to the curb as they observed the larger black male chasing the smaller black male. The larger man (later determined to be the defendant) struck the smaller man (later identified as the victim, Brian Penn) in the face one or more times, causing the victim to fall on his back as if unconscious. The larger man then got on top of the victim and continued to beat him numerous times in the head and face. The students observed that the legs of the victim began shaking during the continued beating. The students yelled at the defendant to stop. He then got up and approached their car. Mixon drove a short distance away. The defendant returned to the victim, got on top of him again, and resumed the beating. The students then drove to the party where Lomzenski called the police.
When the police arrived at the scene, the victim was bleeding profusely from the head and face. Parts of a broken beer bottle were found near his body. The victim was transported to a nearby hospital where he died shortly thereafter. The following morning, a butcher knife was located near the area where the fight occurred.
During the investigation of the homicide, the police questioned the defendant, George Tate, and others. The defendant gave a taped statement wherein he admitted fighting with the victim, although he claimed that he did not know the victim's name. The defendant stated that the victim owed him $20.00 and that he had ridden in a car with the victim, Tate, and another individual to the victim's home. The victim apparently was going to pay the defendant the money he owed, perhaps by giving him a television. When they arrived at the victim's house, the defendant, Tate, and the victim entered. The victim went into the kitchen and grabbed a knife. The defendant and Tate ran outside, followed by the victim. According to the defendant's statement, although the victim discarded the knife and stated that he was not going to stab the defendant or hurt him, he kept approaching the defendant and began grabbing him. The defendant responded by hitting the victim in the face and head. The defendant also admitted that he hit the victim with a large beer bottle because he believed the victim was trying to get the knife again.
George Tate gave a taped statement which partially corroborated the defendant's statement. Tate indicated that he rode in a car with the victim, the defendant, and another individual to the victim's house. On the way, the debt owed by the victim to the defendant was discussed, but there was no argument inside the car. Tate indicated that he went inside the victim's home with the victim and the defendant. When the victim emerged from the kitchen with a knife, Tate ran outside the front door, closely followed by the defendant. However, Tate indicated that, once he reached the front yard, he kept running and did not observe the fight which followed. According to Tate's statement, later that evening Tate encountered the defendant, who admitted that he had had a fight with the victim. Tate asked if anyone had been cut. The defendant responded in the negative and apparently did not give any further details. Tate observed that defendant's hands were scratched.
At the trial, several Bogalusa police officers testified concerning their investigation of the homicide and the questioning of the defendant and George Tate. Mr. Tate was unavailable for trial; however, his taped statement (State Exhibit 3) was introduced into evidence and played by stipulation of counsel. The defendant's taped statement (State Exhibit 4) was also introduced into evidence.
Dr. William P. Newman, III, an expert in autopsy pathology, testified that he performed the autopsy on the victim. Dr. Newman observed injuries to the victim which were consistent with a fight or altercation, *302 including lacerations to the face and scalp. The autopsy revealed fluid in the victim's lungs and generalized brain swelling. Dr. Newman concluded that the victim died as a result of injuries which resulted in pulmonary edema and brain swelling.
The four college students testified about their observation of the fight. All four of them admitted that they could not identify either the defendant or the victim, although they indicated that the larger man knocked the smaller man to the ground and inflicted a severe beating on him.
Andrea Magee, a resident of Dolly Avenue who knew the victim, testified that the victim was suffering from HIV and weighed only about eighty pounds at the time of his death. Although the defendant's height and weight were not established, Magee testified that the victim was a much smaller man than the defendant.
There were no defense witnesses at the trial.

ASSIGNMENTS OF ERROR NUMBERS ONE AND TWO:
In these assignments of error, the defendant contends that the evidence was insufficient to support his conviction of second degree murder. Specifically, he contends that he acted in self-defense. In the alternative, he contends that the evidence warranted only a conviction of the responsive offense of manslaughter.
The standard of review for sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the State proved the essential elements of the crime and the defendant's identity as the perpetrator of that crime beyond a reasonable doubt. See La.C.Cr.P. art. 821; State v. Johnson, 461 So.2d 673, 674 (La.App. 1st Cir.1984). The Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), standard of review incorporated in article 821 is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, La.R.S. 15:438 provides that the factfinder must be satisfied that the overall evidence excludes every reasonable hypothesis of innocence. State v. McLean, 525 So.2d 1251, 1255 (La.App. 1st Cir.), writ denied, 532 So.2d 130 (La.1988).
Louisiana Revised Statute 14:30.1(A)(1) provides:
Second degree murder is the killing of a human being:
When the offender has a specific intent to kill or to inflict great bodily harm; ...
Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La.R.S. 14:10(1). Specific intent may be proved by direct evidence, such as statements by a defendant, or by inference from circumstantial evidence, such as a defendant's actions or facts depicting the circumstances. State v. Johnson, 461 So.2d 1273, 1277 (La.App. 1st Cir.1984). In this case, a specific intent to kill or inflict great bodily harm can be inferred from the fact that the defendant repeatedly hit the victim in the face and head and struck him with a beer bottle.
When self-defense is raised as an issue by the defendant, the State has the burden of proving, beyond a reasonable doubt, that the homicide was not perpetrated in self-defense. Thus, the issue in this case is whether or not a rational factfinder, viewing the evidence in the light most favorable to the prosecution, could have found beyond a reasonable doubt that the defendant did not kill the victim in self-defense. State v. Spears, 504 So.2d 974, 978 (La.App. 1st Cir.), writ denied, 507 So.2d 225 (La.1987).
Louisiana Revised Statute 14:20 provides, in pertinent part:
A homicide is justifiable:
(1) When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger....
However, La.R.S. 14:21 provides:
A person who is the aggressor or who brings on a difficulty cannot claim the *303 right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict.
Although the students witnessed a fight between two black males at the corner of Sullivan Drive and Dolly Avenue, they could only say that the larger man inflicted a severe beating upon the smaller man. They did not know either participant and could not identify either the defendant or the victim as being involved in the fight. Nevertheless, considering all of the evidence in this case, the only reasonable possibility is that these students witnessed the defendant inflict a beating upon the victim, Brian Penn. The defendant admitted fighting with the victim in his taped statement, although he denied knowing the victim's name.
In his brief to this court, the defendant does not deny that he beat the victim. While the defendant did not testify at the trial, the defense theory of the case asserted at trial was that the defendant was justified in beating the victim because the victim had attacked him with a knife. According to the defendant's taped statement, the victim had a knife when he chased the defendant out into the yard. However, the defendant admitted in his statement that the victim threw away the knife before they started to fight.
All of the students testified that the defendant struck one or more blows which caused the victim to fall to the ground. The defendant then continued beating the victim, who appeared to be unconscious. This version of the incident indicates that the defendant was clearly in control of the situation, the victim was completely defenseless, and a continued beating was unnecessary.
As the trier of fact, the jury was free to accept or reject, in whole or in part, the testimony of any witness. State v. Richardson, 459 So.2d 31, 38 (La.App. 1st Cir. 1984). Furthermore, where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Richardson, 459 So.2d at 38. On appeal, this court will not assess the credibility of witnesses or reweigh the evidence to overturn a factfinder's determination of guilt. State v. Creel, 540 So.2d 511, 514 (La.App. 1st Cir.), writ denied, 546 So.2d 169 (La.1989).
The guilty verdict returned in this case indicates that the jury clearly rejected the defense theory of justifiable homicide. The fact that the defendant continued to beat the victim, who had been rendered totally defenseless, and apparently unconscious, supports such a conclusion.
Having found the elements of second degree murder and rejected the theory of justifiable homicide, the jury then had to determine whether or not the circumstances indicated that the crime was actually manslaughter. Louisiana Revised Statute 14:31(A)(1) provides:
Manslaughter is:
A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed; ...
The existence of "sudden passion" and "heat of blood" are not elements of the offense, but rather, are factors in the nature of mitigating circumstances which may reduce the grade of homicide. Provocation is a question of fact to be determined by the trier of fact. Thus, the issue remaining is whether or not a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found that the mitigatory factors were not established by a preponderance of the evidence. State v. Lombard, 486 So.2d 106, 110-111 (La.1986); State v. Smith, 490 So.2d 365, 370 (La.App. 1st Cir.), writ denied, 494 So.2d 324 (La. 1986).
*304 In his brief to this Court, the defendant states:
What could be more of a provocation than to be pursued by another who is carrying a butcher knife? Being so chased would deprive the average person of his ability to rationally respond. And while still upset, the defendant apparently stopped striking the victim after the college students yelled at him.... This would indicate that the defendant did not continue to fight after he calmed down or slightly cooled. At the very least, the grade of homicide should be reduced to manslaughter.
The above statement from the defendant's brief does not accurately reflect the trial testimony. In fact, it appears that even after the fight was interrupted by the students yelling at the defendant to stop, once the defendant approached their vehicle and they pulled away from him, he returned to the victim, got on top of him, and resumed the beating. This version of events is supported by the testimony of two of the students, Mixon and Lomzenski. Dicharry testified that once the defendant approached the vehicle and they pulled away from him, he returned to the victim and got on top of him. However, Dicharry admitted that he did not see the defendant strike the victim again. Busby testified that, when they pulled away after the defendant approached their vehicle, he did not see anything else.
The guilty verdict in this case indicates that the jury concluded this was a case of second degree murder and rejected the possibility of a manslaughter verdict. The evidence in this case indicates that the defendant and the victim had a discussion or argument over a debt shortly before the victim produced a knife and chased the defendant outside. However, the victim discarded the knife before the fatal beating occurred. The guilty verdict in this case demonstrates that the jury concluded either: (1) the initial aggression by the victim was not sufficient provocation to deprive an average person of his self-control and cool reflection; or (2) that an average person's blood would have cooled by the time the defendant knocked the victim to the ground and began repeatedly beating him in the face and head and striking him with a beer bottle. See State v. Overton, 596 So.2d 1344, 1359 (La.App. 1st Cir.), writ denied, 599 So.2d 315 (La.1992).
We have carefully reviewed the record and find that the evidence supports the jury's determination. We are convinced that a rational trier of fact, viewing all of the evidence as favorable to the prosecution as any rational factfinder can, could have concluded that the State proved beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that the defendant was guilty of second degree murder, that he did not kill the victim in self-defense, and that the mitigatory factors were not established by a preponderance of the evidence.
These assignments of error are without merit.

PATENT SENTENCING ERROR
We note the following patent sentencing error. Neither the minutes nor the sentencing transcript show that the trial court, in imposing the sentence, gave the defendant credit for time spent in actual custody prior to sentencing. Such an allowance of credit is mandatory. La.C.Cr.P. art. 880. Accordingly, we find patent sentencing error and amend the sentence to reflect that the defendant is to be given credit for time served prior to the execution of his sentence. See State v. King, 604 So.2d 661, 670 (La. App. 1st Cir.1992). Resentencing is not required; however, we remand this case and order the trial court to amend the commitment and minute entry of the sentence to reflect that the defendant is given credit for time served.
CONVICTION AFFIRMED. SENTENCE AFFIRMED AS AMENDED AND REMANDED WITH ORDER.