683 So.2d 1370 (1996)
STATE of Louisiana
v.
Paul BATES.
No. 95 KA 1513.
Court of Appeal of Louisiana, First Circuit.
November 8, 1996.
*1372 Karen Goodwin, Donald North, Baton Rouge, for State-Appellee.
Michael Pawlus, Lance Engola, Sr., Lloyd S. Sibley, Amite, for Defendant-Appellant.
Before LOTTINGER, C.J., and FOIL and FOGG, JJ.
FOGG, Judge.
Defendant, Paul Bates, was charged by grand jury indictment with second degree murder of his wife, Carolyn Bates, a violation of LSA-R.S. 14:30.1. He pled not guilty and waived his right to a jury trial. The trial court found him guilty as charged and sentenced him to imprisonment at hard labor for life without benefit of parole, probation or suspension of sentence. The defendant has appealed, urging four assignments of error.
The record reflects that, sometime between the late evening hours of Christmas Eve and the predawn hours of Christmas Day in 1993, the defendant stabbed the victim to death while inside her mobile home in Independence, Louisiana. The defendant left the scene and spent the remainder of the night at his mother's house in Kentwood, Louisiana. At approximately 11:00 a.m. on Christmas morning, the defendant admitted the killing to his sister-in-law, Alice Coreen Bates (herein after "Coreen Bates") who first reported the incident to the Kentwood City Police Department. The Tangipahoa Parish Sheriff's Department and the Independence City Police Department, which had jurisdiction over the offense, were contacted; and officers from both departments went to the crime scene as part of their investigation. The defendant was taken into police custody on December 26 at the hospital where he had been taken on the previous day after an attempted suicide. The defendant was placed under formal arrest on December 27, at which time the police officers advised the defendant of his Miranda rights. The defendant waived those rights and gave the police two written statements. At trial, the defendant took the stand in his own defense.

ASSIGNMENT OF ERROR NO. ONE
In this assignment, defendant contends the trial court erred by overruling a defense objection and denying a defense motion to strike testimony given by state witness Coreen Bates, relating the substance of the defendant's inculpatory statement to her on December 25, 1993. The basis for the objection and motion was the alleged failure of the state to notify the defense of the existence of the statement during discovery. The testimony which gave rise to the defendant's objection and motion was Coreen Bates' testimony on direct examination that, on the morning of December 25, 1993, the defendant told her he had killed Carolyn Bates. The defendant argues that the court's rulings prejudiced him by depriving him of his right to a fair trial. He asserts the alleged failure to notify him of the statement misled him into misapprehending the strength of the state's case; and, he claims that, if he had been given notice, it may have changed his defense strategy.
LSA-C.Cr.P. article 716(B) provides:
B. Upon motion of the defendant, the court shall order the district attorney to inform the defendant of the existence, but not the contents, of any oral confession or statement of any nature, made by the defendant, which the district attorney intends to offer in evidence at the trial, with the information as to when, where and to *1373 whom such oral confession or statement was made.
In response to the defense motion for discovery seeking disclosure of any oral confession or statement pursuant to article 716(B), the state notified the defendant in its discovery response that it intended to introduce at trial a statement defendant made to "Corine Bates on September 24, 1993, at her residence concerning this incident."[1] The record also reflects that the state attached documents to its discovery response, including a copy of a police report dated December 27, 1993. The police report discloses not only the existence but also the contents of the December 25, 1993 statement by the defendant to Coreen Bates.
In overruling the defendant's objection and denying his motion to strike the challenged testimony given by Coreen Bates, the trial court reasoned that, although the state's discovery answer incorrectly stated that the defendant's statement was made to Coreen Bates on September 24, 1993 (rather than the correct date of December 25, 1993), sufficient information had been provided in the state's discovery response concerning the statement to satisfy the notification requirements of article 716(B). Based on the record before us, we find no error in the challenged rulings.

ASSIGNMENT OF ERROR NO. TWO
In this assignment, the defendant contends the trial court erred by overruling the objection of the defendant's trial counsel to the admission of State Exhibit S-3 (a knife), based on the failure of the state to lay a foundation by establishing a complete chain of custody for the exhibit.
Article 901(A) of the Louisiana Code of Evidence establishes the general law relative to authenticity:
The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.
To properly identify evidence at trial, the identification can be visual or it can be by chain of custody of the object. State v. Francis, 597 So.2d 55 (La.App. 1 Cir.1992). In order to introduce demonstrative evidence, it suffices if the foundation laid establishes that it is more probable than not that the object is the one connected with the case. A continuous chain of custody is not essential to enable the state to introduce physical evidence as long as the evidence as a whole establishes that it is more probable than not that the object introduced was the same as the object originally seized. Lack of positive identification or a defect in the chain of custody goes to the weight of the evidence rather than to its admissibility. State v. Johnson, 598 So.2d 1152 (La.App. 1 Cir.), writ denied, 600 So.2d 676 (La.1992); State v. Spooner, 550 So.2d 1289 (La.App. 1 Cir. 1989), writ denied, 566 So.2d 394 (La.1990).
The Independence City Police Captain, Michael Whiddon, testified that he received a knife as evidence in connection with this case; and, when asked if he could identify S-3, Capt. Whiddon identified S-3 as the knife the Kentwood City Police Department turned over to his department. However, Capt. Whiddon indicated that the police investigation of the crime scene did not locate any type weapon in the victim's home that could have been used to inflict her injuries. The trial court ruled there was "some foundation" and permitted the state to introduce S-3 into evidence over defendant's objection of lack of a foundation for its introduction. In issuing its ruling, the court stated: "Now, as to what weight and whether it [S-3] is going to be linked further, that remains to be seen...." Thereafter, Capt. Whiddon testified that he had been told that S-3 was the knife the defendant had used to attempt suicide; but Capt. Whiddon stated that he had not been told that the knife was the same weapon used to kill the victim. During his trial testimony, the defendant admitted that (when he went to the hospital after stabbing his wife) he had one stab wound, which he had stated was self-inflicted. However, *1374 in further testimony, the defendant claimed his stab wound was inflicted by the victim and that, although he had attempted suicide, the attempt was accomplished by taking an overdose of "some pills." In any event, the defendant further indicated in his testimony that S-3 was not the knife he used to kill the victim. More specifically, the defendant testified that, after killing his wife, he threw away the murder weapon.
Under the circumstances present herein, even assuming, arguendo, the trial court erred by admitting S-3 into evidence, we are convinced the error was harmless, as the instant guilty verdict was surely unattributable to the error. See LSA-C.Cr.P. art. 921; State v. Johnson, 94-1379 (La.11/27/95); 664 So.2d 94. Furthermore, a trial judge, by virtue of his training in the law, is able to disregard improperly introduced evidence which is possibly prejudicial. See State v. Herrin, 562 So.2d 1 (La.App. 1 Cir.), writ denied, 565 So.2d 942 (La.1990).

ASSIGNMENT OF ERROR NO. THREE
In this assignment, the defendant contends the trial court erred by overruling the objection by the defendant's trial counsel to the introduction of State Exhibit S-9 (a booklet of crime scene photographs) into evidence, on the basis of the state's failure to apprise the defense of the existence of S-9 or to produce copies thereof pursuant to defendant's discovery request.
S-9 consists of ten, approximately 3½ × 5 inch, color photographs of the crime scene. The depiction of the full length or upper portion of the victim's body is included in eight of the photographs. One of the two remaining pictures depicts a watch on the floor, and the other depicts a briefcase on the floor.
Detective Chester Pritchard of the Tangipahoa Parish Sheriff's Office testified that he went to the crime scene on the morning of December 25, 1993, and took the photographs comprising S-9. While Det. Pritchard was describing the pictures in S-9, the defendant's trial counsel objected on the basis that the state had not even mentioned the photographs in its discovery response to the defense discovery request number seven, which sought permission from the state to inspect, copy, examine, etc. any photographs intended for use as evidence at trial (pursuant to LSA-C.Cr.Pr. Article 718). The state's discovery response to that request was "none." There was no supplemental response by the state to request number seven. During arguments on the objection, the state proposed that, if the defendant's trial counsel claimed he was surprised by the existence of the photographs, the court should recess the trial to allow the defense an opportunity to examine the photographs. The court ruled the photographs were discoverable and determined that the defense had not been provided discovery of the pictures. The court stated that it did not believe there had been any effort by the state to intentionally place the defense at a disadvantage by failing to comply with the discovery request regarding the pictures and that the failure to comply constituted at most harmless error. The court indicated to the defendant's trial counsel that the defense would be allowed a recess to examine the photographs. Although the defendant's trial counsel thanked the court for this offer and objected, the record reflects that he appeared to agree to a recess of fifteen minutes to examine the pictures.[2]
Thereafter, Det. Pritchard's testimony resumed with him completing his descriptions of the remaining pictures comprising S-9. He also testified that the photographs fairly and accurately depicted the scenes represented in the pictures. S-9 was then introduced into evidence over continued objection by the defense. In allowing S-9 to be admitted in evidence, the court essentially reiterated its earlier determinations on the matter. In doing so, the court specifically noted the recess the defense had been granted for the purpose of examining the pictures. The court also noted the issue of the location and position of the victim's body had been raised during the trial; and, after taking cognizance that the trial was a bench trial, the court *1375 stated that it believed the pictures would enable the court to determine exactly the location, etc., of the body. During the defendant's trial testimony on cross-examination, he testified that he recognized the pictures in S-9; and, when the prosecutor asked the defendant if that was "the way [defendant] left Carolyn Bates" on Christmas Eve, the defendant responded in the affirmative.
The defendant has failed to allege any actual prejudice to him due to the state's failure to comply with the defense discovery request at issue. The state's failure to comply with discovery requests does not constitute reversible error unless actual prejudice results to the defendant. State v. Busby, 464 So.2d 262 (La.), cert. denied, 474 U.S. 873, 106 S.Ct. 196, 88 L.Ed.2d 165 (1985). Considering all of the circumstances present in this bench trial, we are convinced that no actual prejudice resulted. The pictures were consistent with and cumulative of testimony given at trial. There was no indication in the record, and not even an assertion by the defendant on appeal, that anything was learned from these pictures that was not contained in the defendant's written statements to the police or in his trial testimony. Cf. State v. Busby.

ASSIGNMENT OF ERROR NO. FOUR
In this assignment, the defendant contends the evidence was insufficient to support the trial court's verdict of guilty of second degree murder. In particular, he argues the state failed to prove the element of specific intent to kill or inflict great bodily harm required for second degree murder. The defendant also argues the state failed to prove beyond a reasonable doubt that the killing was not justified in self-defense. Alternatively, he asserts the killing was at most a manslaughter.
In reviewing claims challenging the sufficiency of the evidence, this court must consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). See also LSA-C.Cr.P. art. 821(B); State v. Mussall, 523 So.2d 1305 (La.1988).
LSA-R.S. 14:30.1(A)(1) provides:
A. Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm;...
Specific intent is that state of mind which exists when the circumstances indicate the offender actively desired the prescribed criminal consequences to follow his act or failure to act. LSA-R.S. 14:10(1). Specific intent may be proven by direct evidence, such as statements by a defendant, or by inference from circumstantial evidence, such as a defendant's actions or facts depicting the circumstances. State v. Johnson, 461 So.2d 1273 (La.App. 1 Cir.1984).
When self-defense is raised as an issue by the defendant, the state has the burden of proving, beyond a reasonable doubt, that the homicide was not perpetrated in self-defense. Thus, the issue in this case is whether a rational fact finder, viewing the evidence in the light most favorable to the prosecution, could have found beyond a reasonable doubt that the defendant did not kill the victim in self-defense. State v. Spears, 504 So.2d 974 (La.App. 1 Cir.), writ denied, 507 So.2d 225 (La.1987).
LSA-R.S. 14:20(1) provides:
A homicide is justifiable:
(1) When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger.
However, LSA-R.S. 14:21 provides:
A person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict.
The Tangipahoa Parish Coroner, Dr. Vincent N. Cefalu, testified that he went to the *1376 crime scene and observed the victim's body at about 12:30 p.m. on December 25, 1993. Later that same day, he performed an autopsy on her body. According to Dr. Cefalu, the autopsy revealed the victim suffered a total of sixteen stab wounds. More specifically, his testimony and autopsy report revealed that the victim had six superficial stab wounds to the dorsal aspect of her left hand, i.e., two on the second finger, two on the third finger and two on the fourth finger. The hypo-thenar area of the left hand sustained a superficial laceration. The dorsal aspect of the third finger of the right hand also had a superficial stab wound. The victim also suffered stab wounds to the head; she had a deep laceration in the area of the left eyebrow, a stab wound to the left side of her chin and a stab wound to the left occipital area. There were two knife wounds to the upper right anterior thigh area, a stab wound to the right anti-cubital area of the right arm and a superficial stab wound to the left posterior chest area. Dr. Cefalu determined that the fatal wound was a very deep stab wound of the right mid-epigastric area of the abdomen which lacerated the left lobe of the liver and the abdominal aorta.
Dr. Cefalu indicated the wounds to the hands were defensive wounds. Dr. Cefalu stated that the victim was short and thin, weighing approximately 115-118 pounds, and that she had to have fought with her attacker to receive the wounds she received. However, he stated that it is a "fair assumption" that all of her wounds were inflicted within a few seconds.
In addition to Coreen Bates' testimony that the defendant told her he had killed the victim, the state introduced into evidence S-5 and S-7, the written statements the defendant gave to the police. In S-7, the second statement given by the defendant, he related that he and the victim started arguing and went into the kitchen. According to this statement, the victim retrieved a knife and tried to stab the defendant. The defendant took the knife away from the victim. The defendant began "to stab her in the stomach and once in the neck[,] and she was dead." Both statements refer to the defendant's attempted suicide, which occurred on the following day.
A summary of the defendant's trial testimony follows. On the day before Christmas Eve, he and the victim went shopping for Christmas presents. On Christmas Eve, the defendant and the victim had left their children at the home of the defendant's mother-in-law before returning to the victim's home. Later, one of the victim's friends came to the victim's home. The victim and her friend then went to the friend's home down the street. When the victim returned home, she told the defendant she had been invited to a party, that he was not invited and that she did not want him to go to the party anyway. When some people came to get the victim to go to the party, the victim was not ready to leave. The defendant told the victim he would meet her at a club after she left the party. After the defendant went to the club and waited for her for about an hour, he left the club and proceeded to the victim's home when she failed to come to the club.
When the defendant got to the victim's home, he saw lights on and could hear voices inside the home. The defendant heard someone exit the back door. He went to see who it was but saw no one.
After the defendant entered the victim's home, he asked her what was going on and who had been there. He and the victim began to argue. The victim went into the kitchen and got two knives, one in each hand. The defendant asked her what she was doing. According to the defendant, he had been having problems during their relationship with her marital infidelity involving other men; and he was apparently convinced she had, only moments before, been with another man inside the house. The victim was "fussing and cussing" and started trying to "hit" the defendant. The victim cut the defendant on the hand with one of the knives and managed to stab him in the stomach. The defendant began trying to disarm the victim and succeeded in taking both knives away from her. The defendant stated that his "mind just clicked and the next thing I knew she was dead."
The defendant testified that at the time of the incident he did not know how many times *1377 he stabbed the victim, but he knew the victim was dead when he saw her "fall back." In expressing his lack of intent to kill the victim, the defendant stated that he did not "mean for" it to happen and he did not "have it in my mind to kill me." He killed her because they were struggling, and she was trying to kill him. He further stated that "it just happened at the moment" while they were fighting.
According to the defendant, he loved his wife "more than anything." After the incident, he went to his mother's residence in Kentwood and just sat in his room thinking about what had happened. The defendant testified that he did not know what to do. On the following morning, he felt so bad that he wanted to take his own life and almost did. After he told Coreen Bates he had killed the victim, he was taken to the hospital.
The defendant admitted that he had said that he had stabbed himself when he was brought to the hospital, but he testified that he had attempted suicide not by stabbing himself but by taking "some pills." The defendant further testified that the reason he had stated that he had stabbed himself was he did not know what to do and that, at that time, he did not want to say it was the victim who had stabbed him. The defendant also expressed shame and regret for the incident which resulted in the victim's death.
In articulating its reasons for its verdict, the court noted that the defendant admitted he killed the victim. Thus, the court observed that the only question was whether the defendant's conduct constituted second degree murder, manslaughter, or justifiable homicide. In rendering its verdict of guilty of the charged offense of second degree murder, the court stated it was satisfied with that verdict after thoroughly considering all of the evidence, including the defendant's testimony at trial and his prior statements (to the police and Coreen Bates).
As trier of fact, the trial court was free to accept or reject, in whole or in part, the testimony of any witness. See State v. Marshall, 479 So.2d 598 (La.App. 1 Cir. 1985). Furthermore, the credibility of the witnesses' testimony is a matter of weight of the evidence. A determination of the weight to be given evidence is a question of fact for the trier of fact, not subject to appellate review. State v. Tate, 506 So.2d 546 (La. App. 1 Cir.), writ denied, 511 So.2d 1152 (La.1987).
The number and character of stab wounds as described by Dr. Cefalu in his testimony and autopsy report furnishes sufficient evidence to support a finding of the specific intent to kill or inflict great bodily harm required for second degree murder. Cf. State v. Jackson, 484 So.2d 953 (La.App. 1 Cir.), writ denied, 488 So.2d 688 (La.1986). Based on the defendant's own account of the incident reflecting that he stabbed the victim after disarming her, a rational trier of fact could have reasonably concluded that the killing was not necessary to save defendant from the danger envisioned by LSA-R.S. 14:20(1) and/or that defendant had abandoned the role of defender and taken on the role of an aggressor and, as such, was not entitled to claim self-defense. See LSA-R.S. 14:21. Cf. State v. Wilson, 613 So.2d 234 (La.App. 1 Cir.1992), writ denied, 93-0533 (La.3/25/94); 635 So.2d 238. Consequently, the trial court's rejection of the defense of justifiable homicide is supported by these circumstances.
Having found the elements of second degree murder and rejected the theory of justifiable homicide, the trial court then had to determine whether or not the circumstances indicated that the crime was actually manslaughter. LSA-R.S. 14:31(A)(1) provides:
A. Manslaughter is:
(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed; ...
*1378 The existence of "sudden passion" and "heat of blood" are not elements of the offense but, rather, are factors in the nature of mitigating circumstances which may reduce the grade of homicide. Provocation is a question of fact to be determined by the trier of fact. Thus, the issue remaining is whether or not a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found that the mitigatory factors were not established by a preponderance of the evidence. State v. Lombard, 486 So.2d 106 (La.1986); State v. Pittman, 93-0892 (La.App. 1 Cir. 4/8/94); 636 So.2d 299.
The guilty verdict in this case and the reasons stated by the trial court indicate the trial court concluded this was a case of second degree murder and rejected the possibility of a manslaughter verdict. The guilty verdict demonstrates that the trial court concluded either: (1) any initial aggression by the victim and/or argument between her and defendant was (were) not sufficient provocation to deprive an average person of his self-control and cool reflection; or (2) that an average person's blood would have cooled by the time defendant disarmed the victim and took on the role of aggressor. See State v. Pittman, 636 So.2d at 304.
We have carefully reviewed the record and find that the evidence supports the trial court's determination. We are convinced that a rational trier of fact, viewing all of the evidence as favorable to the prosecution as any rational fact finder can, could have concluded that the state proved beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that the defendant was guilty of second degree murder, that he did not kill the victim in self-defense, and that the mitigatory factors were not established by a preponderance of the evidence.

PATENT ERROR
Under the authority of LSA-C.Cr.P. art. 920(2), this court routinely reviews appellate records for patent error. After reviewing the record, we have discovered patent sentencing error caused by the trial court's failure to give the defendant credit for time served. See LSA-C.Cr.P. art. 880. Accordingly, we amend the instant sentence to reflect that the defendant is to be given credit for time served prior to execution of the sentence. See State v. Greer, 572 So.2d 1166 (La.App. 1 Cir.1990). While we are aware that the sentence is for life without benefit of parole, probation or suspension of sentence, we note and correct the failure to give credit for time served because this failure could make a difference if the sentence is ever considered for commutation and, if a decision is made to commute the sentence, the failure could also make a difference as to when the commutation should take effect.
Resentencing is not required. However, we remand the case and order the trial court to amend the commitment and the minute entry of the sentencing to reflect that the defendant is to be given credit for time served on the sentence. See State v. King, 604 So.2d 661 (La.App. 1 Cir.1992).
CONVICTION AFFIRMED; SENTENCE AFFIRMED AS AMENDED AND REMANDED WITH ORDER.
NOTES
[1] Bates' middle name in the forgoing quote is as it appears in the state's discovery response. Other references to her middle name in this opinion use the spelling "Coreen," which appears in the trial transcript.
[2] In expressing his apparent agreement, the defendant's trial counsel stated: "It is a quarter to 11, your honor, maybe just recess until 11."