NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2020 KA 0335

STATE OF LOUISIANA

VERSUS

AARON JOSHUA NEAMES

Judgment Rendered: ___ **DEC 1 0 2020** ___

* * * * *

On Appeal from the
Twenty-First Judicial District Court
In and for the Parish of Livingston
State of Louisiana
Trial Court No 32,022

The Honorable Robert H. Morrison, III, Judge Presiding

* * * * *

Jane L. Beebe                               Attorney for Defendant/Appellant,
Addis, Louisiana                            Aaron Joshua Neames

Scott M. Perrilloux                         Attorneys for Appellee,
District Attorney                           State of Louisiana
Zachary Daniels
Assistant District Attorney
Livingston, Louisiana

* * * * *

BEFORE:   McDONALD, HOLDRIDGE, AND PENZATO, JJ.

McDonald, J. concurs with reasons.

**PENZATO, J.**

The defendant, Aaron Joshua Neames, was charged by grand jury indictment with attempted second-degree murder, a violation of La. R.S. 14:27 and 14:30.1. He pled not guilty and, following a jury trial, was found guilty by a ten-to-two verdict of the responsive offense of attempted manslaughter, a violation of La. R.S. 14:27 and 14:31. He was sentenced to three years imprisonment at hard labor. The defendant now appeals, designating two assignments of error. We set aside the conviction and sentence and remand for a new trial.

## FACTS

Benjamin Jarreau did not personally know the defendant, but he knew of him and where he lived. Jarreau stole a Ford Fusion and on the morning of March 1, 2015, drove to the defendant's trailer in Pannu Trailer Park in Walker, Livingston Parish. Jarreau planned to rob the defendant to support his ongoing drug habit.

Jarreau entered the defendant's trailer with a loaded .22 caliber long rifle. The defendant was not home, but several people were in the trailer. Jarreau, at gunpoint, had all the people wait in the trailer for a few hours until the defendant came home. When the defendant got home, Jarreau shot at the floor near the defendant's feet. Jarreau approached the defendant. The defendant grabbed Jarreau's rifle, and they struggled. The defendant wrested the rifle from Jarreau. The defendant produced his own gun, a .40 caliber semi-automatic pistol. Jarreau went to his knees and pleaded not to be killed. After two or three people in the trailer struck Jarreau several times, the defendant told him to get out of his house.

Jarreau left the trailer, got in the Fusion, and began driving away. The defendant approached the Fusion from behind and began firing at Jarreau, striking him in the shoulder and in the elbow. Jarreau drove toward the back of the trailer

park, where he got stuck in a ditch. Jarreau left the car and went to a nearby Best Stop store, where he was detained by the police. The defendant was brought in for questioning and arrested.

The defendant did not testify at trial.

## SUFFICIENCY OF THE EVIDENCE

In his second assignment of error,[1] the defendant argues that the evidence was insufficient to support his conviction for attempted manslaughter. The defendant does not deny shooting at the victim but argues that he was acting in self-defense.

A conviction based on insufficient evidence cannot stand as it violates Due Process. *See* U.S. Const. amend. XIV; La. Const. art. I, § 2. The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). *See* La. Code Crim. P. art. 821(B); *State v. Ordodi*, 2006-0207 (La. 11/29/06), 946 So.2d 654, 660. The *Jackson* standard of review, incorporated in Article 821, is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, La. R.S. 15:438 provides that the factfinder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. *State v. Patorno*, 2001-2585 (La. App. 1st Cir. 6/21/02), 822 So.2d 141, 144.

Louisiana Revised Statutes 14:31(A) provides, in pertinent part:

Manslaughter is:

---

[1] When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. While the defendant is entitled to a new trial because of a non-unanimous jury verdict, sufficiency is still reviewed because the accused may be entitled to an acquittal rather than a new trial. *See State v. Hearold*, 603 So.2d 731, 734 (La. 1992).

3

(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed[.]

Louisiana Revised Statutes 14:27(A) defines attempt, in pertinent part, as:

Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.

In order to obtain a conviction for attempted manslaughter under La. R.S. 14:31(A)(1), the State must prove beyond a reasonable doubt that the defendant possessed the specific intent to kill. Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1); *State v. Cousan*, 94-2503 (La. 11/25/96), 684 So.2d 382, 390; *State v. Gregoire*, 2013-0751 (La. App. 1st Cir. 3/21/14), 143 So.3d 503, 506, *writ denied*, 2014-0686 (La. 10/31/14), 152 So.3d 151. Such a state of mind can be formed in an instant. *Cousan*, 684 So.2d at 390. Specific intent need not be proven as a fact, but may be inferred from the circumstances of the transaction and the actions of the defendant. *State v. Mickelson*, 2012-2539 (La. 9/3/14), 149 So.3d 178, 182. The existence of specific intent is an ultimate legal conclusion to be resolved by the trier of fact. *State v. Jackson*, 2018-0261 (La. App. 1st Cir. 11/2/18), 265 So.3d 928, 934, *writ denied*, 2018-1969 (La. 4/22/19), 268 So.3d 304. It has long been recognized that specific intent to kill may be inferred from a defendant's act of pointing a gun and firing at a person. *State v. Reed*, 2014-1980 (La. 9/7/16), 200 So.3d 291, 309, *cert. denied*, __ U.S. __, 137 S.Ct. 787, 197 L.Ed.2d 258 (2017);

4

*State v. Eby*, 2017-1456 (La. App. 1st Cir. 4/6/16), 248 So.3d 420, 424, *writ denied*, 2018-0762 (La. 2/11/19), 263 So.3d 1153.

The use of force or violence upon the person of another is justifiable under La. R.S. 14:19(A)(1)(a) when committed for the purpose of preventing a forcible offense against the person or a forcible offense or trespass against property in a person's lawful possession, provided that the force or violence must be reasonable and apparently necessary to prevent such offense. An aggressor may not claim self-defense without showing he first withdrew from the conflict in good faith and in such a manner that his adversary knew or should have known of his intention to withdraw and discontinue the conflict. La. R.S. 14:21.

Louisiana law is unclear as to who has the burden of proving self-defense in a non-homicide case, and what the burden is.[2] *State v. Barnes*, 590 So.2d 1298, 1300 (La. App. 1st Cir. 1991). As we noted in *State v. Serigny*, 2019-0958 (La. App. 1st Cir. 1/9/20), 2020 WL 104684, at *2 (unpublished), because this issue has never been resolved by our supreme court, this circuit has similarly left the issue unresolved. *See State v. Freeman*, 427 So.2d 1161, 1162-63 (La. 1983). In previous cases, this court has analyzed the evidence under both standards of review, which is whether the defendant proved self-defense by a preponderance of the evidence or whether the State proved beyond a reasonable doubt that the defendant did not act in self-defense. *State v. Mollerberg*, 2018-0256 (La. App. 1st Cir. 9/24/18), 260 So.3d 599, 605-06. Similar to our approach in *Mollerberg*, we do not decide the issue of who has the self-defense burden because under either standard the evidence established the defendant did not act in self-defense. *See State v. Thomas*, 2019-0409 (La. App. 1st Cir. 10/25/19), 289 So.3d 1030, 1039.

---

[2] The law is clear regarding the burden for proving self-defense in homicide cases. When a defendant in a homicide prosecution claims self-defense, the State must prove beyond a reasonable doubt that the homicide was not committed in self-defense. *State v. Bates*, 95-1513 (La. App. 1st Cir. 11/8/96), 683 So. 2d 1370, 1375.

The defendant herein does not deny that he shot Jarreau. He claims rather that the only question in this case is whether he acted in self-defense. According to the defendant, he shot at the car Jarreau was in only after Jarreau began backing his car toward the defendant. The defendant asserts that Jarreau "of course denied backing up the car, his only remaining 'weapon,' and aiming it" for the defendant. Thus, the defendant concludes, he had every right under Louisiana law to prevent a forcible offense against himself and fire his pistol at the car after Jarreau had "made the choice to reverse his car towards" the defendant.

We note initially that, despite the defendant's assertion, Jarreau never denied backing up the car. In fact, he was clear in his testimony that he backed up the car after going forward. The defendant's trailer was one of the first trailers on the left when Jarreau turned into the trailer park and parked. There was no exit at the back of the trailer park; rather, after entering, a driver could exit only after driving a loop around the trailer park back toward the entrance. Jarreau parked on the street in front of the defendant's trailer so that the driver's side door was facing the trailer. When the defendant told Jarreau to get out of his house, Jarreau got in the car and turned right, his intention being to turn the car around and drive out the front of the trailer park. Unable to complete a U-turn, he put the car in reverse to back up to give himself more room for the right-hand turn. The defendant started shooting at Jarreau. Jarreau then put the car in drive and drove forward; that is, he drove toward the back of the trailer park because that was the only direction he could go to distance himself from the defendant's shooting.

The defendant did not testify at trial, and there was no witness testimony at trial regarding Jarreau backing his car at the defendant. It was only through defense counsel's argument at trial and now appellate counsel's argument herein,

6

that the defendant advanced the theory that he shot at Jarreau because Jarreau was backing the car toward defendant.

The defendant's audio statement to the police shortly following the incident, however, belies any theory of self-defense. In his statement, the defendant admitted he pistol-whipped Jarreau on his head, then told him to get out of his house. Jarreau had just left and got in the car when the defendant, still inside, discovered that Jarreau had taken some things that belonged to the defendant. The defendant then left his trailer to go get his belongings back. He said he shot at the car Jarreau was in so the police would have a "legitimate" way of finding him. When the police officer informed the defendant they had found six shell casings at the scene that appeared to be .40 caliber, the defendant responded, "I was pissed." The defendant further indicated that after he shot up the car, he had not realized that Jarreau had broken down on the other side of the trailer (park); and that if he had known that, he would have chased him down and got him. When asked why he did not call the police when he had Jarreau disarmed and still in his trailer, the defendant indicated that his adrenaline was going and that he "flashed out."

While under La. R.S. 14:20(C), the defendant had no duty to retreat, his being in a place where he had a right to be was not dispositive of whether he shot Jarreau in self-defense. That is, based on Jarreau's testimony and, particularly, on the defendant's own statement, a rational trier of fact could have reasonably concluded that shooting Jarreau twice was not necessary to save the defendant from the danger envisioned by La. R.S. 14:20(A)(1) and/or that the defendant had abandoned the role of defender and taken on the role of aggressor and, as such, was not entitled to claim self-defense. *See* La. R.S. 14:21; *State v. Bates*, 95-1513 (La. App. 1st Cir. 11/8/96), 683 So.2d 1370, 1377. In finding the defendant guilty, it is clear the jury rejected the claim of self-defense and concluded that the use of

deadly force under the particular facts of this case was neither reasonable nor necessary.

The jury can accept or reject the testimony of any witness. To resolve conflicting testimony relative to factual matters, the jury must make credibility determinations and weigh the evidence. *Eby*, 248 So.3d at 426. *See State v. Mire*, 2014-2295 (La. 1/27/16), 269 So.3d 698, 700 (*per curiam*). The *Jackson* standard of review does not permit a reviewing court to substitute its own appreciation of the evidence for the factfinder's, assess the credibility of witnesses, or reweigh evidence. *State v. McGhee*, 2015-2140 (La. 6/29/17), 223 So.3d 1136, 1137 (*per curiam*); *State v. Calloway*, 2007-2306 (La. 1/21/09), 1 So.3d 417, 422 (*per curiam*). Thus, in the absence of internal contradiction or irreconcilable conflict with the physical evidence, one witness's testimony, if believed by the jury, is sufficient to support a factual conclusion. *State v. Higgins*, 2003-1980 (La. 4/1/05), 898 So.2d 1219, 1226, *cert. denied*, 546 U.S. 883, 126 S.Ct. 182, 163 L.Ed.2d 187 (2005). An appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the factfinder and thereby overturning a verdict based on an exculpatory hypothesis of innocence presented to, and rationally rejected by, the jury. *Eby*, 248 So.3d at 426-27.

The jury's determination was not irrational under the facts and circumstances presented. *See Ordodi*, 946 So.2d at 662. After a thorough review of the record, we find that the evidence supports the jury's guilty verdict. Any rational trier of fact, viewing the evidence presented in the light most favorable to the State, could have found beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, all elements for attempted manslaughter. *See Eby*, 248 So.3d at 427.

This assignment of error is without merit.

## NON-UNANIMOUS JURY VERDICT

In his first assignment of error, the defendant argues the non-unanimous jury verdict violated his Sixth Amendment right to a jury trial, which requires a unanimous verdict to sustain a conviction and sentence at hard labor.

We note that the defendant did not, by way of written motion or argument, challenge the constitutionality of the verdict in the trial court below.[3] The general rule is a party must properly raise constitutional attacks in the trial court, but a recognized exception to that rule is when a statute has been declared unconstitutional in another case. *Unwired Telecom Corp. v. Parish of Calcasieu*, 2003-0732 (La. 1/19/05), 903 So.2d 392, 399 n.5 (on rehearing); *State v. Smith*, 2009-100 (La. App. 5th Cir. 8/25/09), 20 So.3d 501, 505, *writ denied*, 2009-2102 (La. 4/5/10), 31 So.3d 357; *Spooner v. East Baton Rouge Parish Sheriff Dep't*, 2001-2663 (La. App. 1st Cir. 11/8/02), 835 So.2d 709, 711.

In the recent decision of *Ramos v. Louisiana*, __ U.S. __, 140 S.Ct. 1390, 1397, 206 L.Ed.2d 583 (2020), the United States Supreme Court overruled *Apodaca v. Oregon*,[4] 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972) and held that the right to a jury trial under the Sixth Amendment of the United States Constitution, incorporated against the States by way of the Fourteenth Amendment of the United States Constitution, requires a unanimous verdict to convict a defendant of a serious offense. The *Ramos* Court further noted that its ruling applied to those defendants convicted of felonies by non-unanimous verdicts whose cases are still pending on direct appeal. *Ramos*, 140 S.Ct. at 1406. Thus, given the *Ramos* Court's declaration of the unconstitutionality of non-unanimous

---

[3] During the jury charge conference, prior to closing arguments, defense counsel did object to a non-unanimous jury verdict.

[4] Oregon's non-unanimous jury verdict provision of its state constitution was challenged in *Apodaca*. *Johnson v. Louisiana*, 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972), decided with *Apodaca*, upheld Louisiana's then-existing constitutional and statutory provisions allowing nine-to-three jury verdicts.

jury verdicts, the defendant may challenge for the first time on appeal his conviction by a non-unanimous jury verdict rendered pursuant to La. Code Crim. P. art. 782(A).

In the instant matter, a copy of the polling sheets indicated the defendant was convicted by a non-unanimous ten-to-two jury verdict. Accordingly, the defendant's conviction and sentence are set aside, and the case is remanded for a new trial.

**CONVICTION AND SENTENCE SET ASIDE; REMANDED FOR NEW TRIAL.**

10

**STATE OF LOUISIANA**          **STATE OF LOUISIANA**

**VERSUS**                      **FIRST CIRCUIT COURT OF APPEAL**

**AARON JOSHUA NEAMES**          **NUMBER 2020 KA 0335**


**McDONALD, J., CONCURRING IN PART**

While I agree with vacating the convictions and sentences and remanding the case for a new trial pursuant to **Ramos**, I concur with the majority opinion. Because the case must be retried, discussing the evidence in detail here is tantamount to giving an advisory opinion.

