CRAIN, J.
The defendant, Kyren Eby, appeals his conviction for second degree murder and life sentence at hard labor without the benefit of parole, probation, or suspension of sentence. We affirm.
FACTS
On September 26, 2013, between 10:00 and 11:00 a.m., the defendant shot and killed Garland Ruffin in the parking lot of the apartment complex where they both lived. The two men first engaged in a fistfight in the parking lot, then each briefly went back to his own apartment. They returned to the parking lot, exchanged words, and the defendant shot the unarmed victim.
Tiffany Vessel, the victim's girlfriend, witnessed the defendant shoot the victim. She claims the victim was shot while nervously attempting to back away. The defendant disputes that version of the events and claims he acted in self-defense, shooting the victim as he threateningly approached and appeared to be drawing a weapon.
SUFFICIENCY OF THE EVIDENCE
In his first assignment of error, the defendant argues the evidence was insufficient to support his conviction.
A conviction based on insufficient evidence cannot stand, as it violates due process. See U.S. Const. amend. XIV ; La. Const. art. I, § 2. Pursuant to the applicable *424 due process standard of Jackson v. Virginia , 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original), "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." When a conviction is based on circumstantial evidence, the reviewing court must determine whether, viewing the evidence in the light most favorable to the prosecution, a reasonable trier of fact could have concluded beyond a reasonable doubt every reasonable hypothesis of innocence had been excluded. State v. Jones , 16-1502 (La. 1/30/18), --- So.3d ----, ----, 2018 WL 618433. This does not mean the reviewing court determines whether the defendant has suggested another possible hypothesis that could explain the events in an exculpatory fashion. Rather, the reviewing court evaluates the evidence in the light most favorable to the state and determines whether the alternative hypothesis is sufficiently reasonable that a rational factfinder could not have found proof of guilt beyond a reasonable doubt. Jones, --- So.3d at ----. Further, since the weight given evidence is not subject to appellate review, evidence will not be reweighed by the reviewing court to overturn a factfinder's determination of guilt. State v. Wilson , 15-1794 (La. App. 1 Cir. 4/26/17), 220 So.3d 35, 41.
Relative to this case, second degree murder is the killing of a human being when the offender has specific intent to kill or inflict great bodily harm. See La. R.S. 14:30.1A(1). Specific criminal intent is "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La. R.S. 14:10(1). Specific intent may be formed in an instant. State v. Mickelson, 12-2539 (La. 9/3/14), 149 So.3d 178, 183. Because it is a state of mind, specific intent need not be proven as a fact, but may be inferred from circumstances surrounding the offense and the defendant's actions. Mickelson, 149 So.3d at 182. For example, specific intent to kill may be inferred from a defendant's act of pointing a gun and firing at a person. State v. Reed , 14-1980 (La. 9/7/16), 200 So.3d 291, 309, cert. denied, --- U.S. ----, 137 S.Ct. 787, 197 L.Ed.2d 258 (2017).
The defendant does not dispute drawing a gun, pointing it at, and shooting the victim. Rather, he claims he acted in self-defense. A homicide is justifiable "[w]hen committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger." La. R.S. 14:20A(1). An aggressor may not claim self-defense without showing he first withdrew from the conflict in good faith and in such a manner that his adversary knew or should have known of his intention to withdraw and discontinue the conflict. La. R.S. 14:21. When a defendant asserts he acted in self-defense, the state bears the burden of establishing beyond a reasonable doubt the defendant did not act in self-defense. Reed , 200 So.3d at 309. On appeal, the defendant argues the state failed to meet that burden.
Alternatively, the defendant contends the evidence was sufficient only to prove he committed manslaughter. Manslaughter is, pertinently, a homicide that would be second degree murder but is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. La. R.S. 14:31A(1). "Sudden passion" and "heat of blood" are mitigating factors in the nature of a defense. If the defendant establishes *425 those factors by a preponderance of the evidence, a verdict for murder is inappropriate. Reed , 200 So.3d at 311 ; State v. LeBoeuf , 06-0153 (La. App. 1 Cir. 9/15/06), 943 So.2d 1134, 1138, writ denied , 06-2621 (La. 8/15/07), 961 So.2d 1158. However, provocation will not reduce a homicide to manslaughter if the factfinder finds the offender's blood had actually cooled, or an average person's blood would have cooled, at the time the offense was committed. See La. R.S. 14:31A(1). Provocation and time for cooling off are determinations made by the jury using the standard of the average or ordinary person with ordinary self-control. Reed , 200 So.3d at 311.
Vessel lived with the victim and testified he walked outside to talk on his phone around 10:00 a.m. Approximately twenty minutes later, Vessel called the victim, who confirmed he was outside. Fifteen to twenty minutes after that, the victim returned to the apartment, sweating and breathing heavily, told Vessel he was in a fight, and began searching for his tennis shoes. The victim told Vessel to follow him, indicating he was going to engage in another fight.
Vessel followed the victim, who changed from flip flops to tennis shoes in the parking lot, and observed the defendant standing outside his apartment, two buildings over. The victim walked in that direction and "exchange[d] words" with the defendant from approximately five or six feet away. Vessel testified the victim lifted his hands in a manner signaling, "What's up ... you want to fight." She testified the defendant stood, arms folded, with a "smirk" on his face.
Vessel explained that when the victim walked on the sidewalk in front of the defendant's apartment, the defendant pulled a gun. She claimed the victim raised his arms again and nervously began retreating. While the victim backed up, the defendant fired three shots, and the victim fell to the ground. Vessel testified the defendant walked toward her and lifted his arm as if to shoot her, then lowered his arm and walked toward his apartment. Vessel ran to her apartment to get her phone and, as she was calling 911, saw the defendant leave in a car.
Vessel identified the defendant as the shooter in a photographic lineup and also in court. She said she had seen the defendant around the apartment complex before the shooting, but never spoke to him and never saw any interaction between him and the victim before that day. She testified the victim was unarmed when he was shot.
Dr. Cameron Snyder conducted the victim's autopsy and testified he suffered two gunshot wounds, one in the neck and the other striking the left arm then entering the victim's chest, injuring both his lungs and heart. Dr. Snyder identified the cause of death as a gunshot wound to the thorax and noted a yellow-green part of a bullet found inside the victim's body. Dr. Snyder opined the victim was shot while his left arm was either outstretched forward or across his body toward the right, possibly explaining the bullet's trajectory. He indicated the bullets were fired from the victim's left and from an indeterminate range of several feet or more, not at close or medium range.
Baker Police Department Detective Greg Brown arrived at the scene at approximately 11:07 a.m. and observed medical services administering care to the victim. He learned Vessel was an eyewitness to the shooting and, after taking her statement, determined the defendant was the shooter. Detective Brown was told the defendant fled with a female in a red Impala, which was later located approximately one block away at the apartment of the defendant's sister. No evidence was found in the Impala; however, officers searching the *426 sister's apartment located nine millimeter rounds with distinctive green tips like those removed from the victim's body and the same type of casings found at the crime scene. Detective Brown spoke with the defendant later that same day and noted the defendant had fresh, superficial injuries consistent with a fistic encounter, including bruising and abrasions to his face near his eye and a small abrasion on his right leg.
The defendant's girlfriend, Miesha Scott, was inside the defendant's apartment during the shooting. She testified she and the defendant were sleeping, when someone outside could be heard talking on the phone. The defendant went outside and returned ten to twenty minutes later with his eyeglasses missing and scratches on his face. She testified the defendant did not tell her what happened, but then admitted telling detectives the defendant told her "he shot him" and asked to be driven to his sister's residence. She saw a man she did not recognize who was shot and on the ground yelling. She walked past the man to reach her vehicle to leave, explaining she was pregnant and panicked.
The defendant testified. He explained that on the morning of the shooting, he was sleeping after working the nightshift, and was awakened by someone outside his window arguing on the phone. He went outside and saw the victim, who seemed "pretty upset," and asked him to hold it down. The defendant said the victim came toward him, asked who he was talking to, and as the defendant repeated himself, the victim punched him in the face. A fistfight ensued and the victim, who was approximately fifty pounds heavier, tackled the defendant. The defendant claimed the victim then jumped up, stated "I'm fixing to show you," and ran off.
After the victim left, the defendant went inside his apartment, believing the encounter was over. To get out of the area, he planned to get something to eat with Scott. Before going outside to wait for Scott, the defendant picked up his gun, explaining he usually carried it with him. Seconds after going back outside, the defendant saw the victim running across the parking lot toward him. According to the defendant, the victim was approximately five to six feet away when he reached toward his waistband, "saying something along the lines of, 'what's up now?' " Fearful he was reaching for a gun, the defendant pointed his own gun at the victim, who did not stop running, so he pulled the trigger. The defendant then left with Scott, explaining he did not call for help because he did not have a cell phone.
The defendant denied seeing Vessel or pointing his gun at her. He heard Vessel's contradictory testimony, but maintained she lied and did not witness the shooting.
The jury can accept or reject the testimony of any witness. State v. Mire , 14-2295 (La. 1/27/16), --- So.3d ----, ---- (2016 WL 314814). To resolve conflicting testimony relative to factual matters, the jury must make credibility determinations and weigh the evidence. Reed , 200 So.3d at 312. The Jackson standard of review does not permit a reviewing court to substitute its own appreciation of the evidence for the factfinder's, assess the credibility of witnesses, or reweigh evidence. See State v. McGhee , 15-2140 (La. 6/29/17), 223 So.3d 1136, 1137 ; State v. Calloway , 07-2306 (La. 1/21/09), 1 So.3d 417, 422 (per curiam ). Thus, in the absence of internal contradiction or irreconcilable conflict with the physical evidence, one witness's testimony, if believed by the jury, is sufficient to support a factual conclusion. Reed , 200 So.3d at 312. An appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the factfinder and *427 thereby overturning a verdict based on an exculpatory hypothesis of innocence presented to, and rationally rejected by, the jury. Calloway , 1 So.3d at 418.
The jury credited Vessel's testimony over the defendant's, which reasonably supports its determination that the defendant shot the victim with specific intent to kill, not in self-defense or in sudden passion or heat of blood. The jury's determination was not irrational under the facts and circumstances presented. See State v. Ordodi , 06-0207 (La. 11/29/06), 946 So.2d 654, 662. Any rational trier of fact, viewing the evidence presented in the light most favorable to the state, could have found beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, all elements for second degree murder.
This assignment of error is without merit.
JURY MISCONDUCT
The defendant argues the district court erred in failing to replace a juror who became ill after viewing autopsy photographs, and in failing to address an "improper communication" between that juror and an investigator for the prosecution.
During the cross-examination of Dr. Snyder regarding photographs from the victim's autopsy,[1] the state approached the bench and explained that one of the jurors appeared to be feeling faint. It was further explained that the state's investigator spoke with the juror and provided him water. After the trial court verified the juror was okay, the trial continued. The defendant neither objected nor moved for a mistrial relative to these events.
The defendant's failure to contemporaneously object to the interaction between the state and the juror precludes appellate review of any possible errors related thereto. See La. Code Crim. P. art. 841A; State v. Trahan , 93-1116 (La. App. 1 Cir. 5/20/94), 637 So.2d 694, 704 ("[t]he grounds for objection must be sufficiently brought to the court's attention to allow it the opportunity to make the proper ruling and prevent or cure any error"). Consequently, we do not address this assignment of error.
EXCESSIVE SENTENCE
In his last assignment of error, the defendant asserts that his life sentence at hard labor and without benefit of parole, probation, or suspension of sentence is excessive.
Article I, Section 20 of the Louisiana Constitution prohibits the imposition of excessive punishment. A sentence is unconstitutionally excessive if it is grossly disproportionate to the severity of the offense or constitutes nothing more than a purposeless and needless infliction of pain and suffering. State v. Shaikh , 16-0750 (La. 10/18/17), 236 So.3d 1206, ----. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks one's sense of justice. State v. Weaver , 01-0467 (La. 1/15/02), 805 So.2d 166, 174.
Louisiana Revised Statute 14:30.1B mandates that a person convicted of second degree murder be sentenced to life in prison at hard labor and without benefit of parole, probation, or suspension of sentence. The legislature defines criminal conduct and provides the penalties to be imposed against persons engaged in such conduct, which penalties reflect the degree to which the criminal conduct affronts *428 society. Weaver , 805 So.2d at 174 ; State v. Dorthey, 623 So.2d 1276, 1280 (La. 1993) ; see also State v. Fobbs , 99-1024 (La. 9/24/99), 744 So.2d 1274 (per curiam ). Courts must apply statutorily mandated sentences, which are presumed constitutional See State v. Johnson , 97-1906 (La. 3/4/98), 709 So.2d 672, 676 ; Dorthey , 623 So.2d at 1278. The defendant may rebut the presumption of constitutionality by producing clear and convincing evidence that he is exceptional meaning because of unusual circumstances he is a victim of the legislature's failure to assign sentences meaningfully tailored to the culpability of the offender, gravity of the offense, and circumstances of the case. Johnson , 709 So.2d at 676 ; State v. Martin , 10-0101, 2010 WL 3527209, pp. 2-3 (La. App. 1 Cir. 9/10/10).
At the hearing on the motion to reconsider sentence, the defendant testified he had no prior arrest record, graduated high school, worked in a chemical plant, coached his son's little league football team, served as a father figure to his nephew, and attended church. He also testified he was offered a twenty-year sentence in exchange for a guilty plea, but claimed to have been unaware of any deadline for the offer. The district court found no justification to deviate from the mandatory life sentence, noting the killing was "senseless, callous, and merciless."
We agree that the mandatory life sentence was warranted. The defendant failed to clearly and convincingly show he is exceptional and a victim of the legislature's failure to assign a sentence meaningfully tailored to his culpability, to the gravity of his crime, and to the circumstances of the case. The sentence is not a purposeless and needless infliction of pain and suffering, nor does it shock one's sense of justice.
This assignment of error is without merit.
CONVICTION AND SENTENCE AFFIRMED.
Pettigrew, J. concurs.

Prior to Dr. Snyder's testimony, the district court addressed the photographs with counsel, and defense counsel indicated he had no objection to them.