NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL
FIRST CIRCUIT

2019 KA 1560

STATE OF LOUISIANA

VERSUS

STEVEN RODGERS

Judgment rendered___NOV 0 9 2020___

* * * * *

On Appeal from the
Twenty-Second Judicial District Court
In and for the Parish of Washington
State of Louisiana
No. 16-CR6-132565 Div. "J" Criminal

The Honorable William J. Knight, Judge Presiding

* * * * *

Warren L. Montgomery
District Attorney
Jason Cuccia
Assistant District Attorney
Franklinton, Louisiana

Matthew Caplan
Assistant District Attorney
Covington, Louisiana

Attorneys for Plaintiff/Appellee
State of Louisiana

Jane L. Beebe
Appellate Attorney
New Orleans, Louisiana

Attorney for Defendant/Appellant
Steven Rodgers

* * * * *

BEFORE: McDONALD, HOLDRIDGE, AND PENZATO, JJ.

**HOLDRIDGE, J.**

The defendant, Steven Rodgers, was charged by grand jury indictment with second degree murder (count 1), a violation of La. R.S. 14:30.1; and felon in possession of a firearm (count 2), a violation of La. R.S. 14:95.1. He pled not guilty and, following a jury trial, was found guilty as charged on count 2. On count 1, he was found guilty of the responsive offense of manslaughter, a violation of La. R.S. 14:31. He filed a motion for postverdict judgment of acquittal, which was denied. For the manslaughter conviction, the defendant was sentenced to forty years imprisonment at hard labor without benefit of probation or suspension of sentence. For the felon in possession of a firearm conviction, he was sentenced to ten years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. The sentences were ordered to run concurrently.

The State filed a habitual offender bill of information. At the habitual offender hearing, the defendant stipulated to being a third-felony habitual offender.[1] On the manslaughter conviction, the trial court resentenced the defendant to the enhanced sentence of fifty years imprisonment. This sentence was ordered to run concurrently with the ten-year sentence on count 2.

The defendant now appeals, designating one assignment of error. We affirm the convictions and habitual offender adjudication, and we affirm the sentence as to count 2 and the sentence as amended as to count 1.

## FACTS

The defendant lived with his girlfriend, Wendy Hayes, in her home in Bogalusa, Louisiana. Earlier in the day, on April 26, 2016, Wendy's neighbor, Shadette Haynes, saw the defendant and Wendy arguing outside. Later, Wendy went to Shadette's house to talk to her. According to Shadette, Wendy wanted to

---

[1] The defendant has prior convictions for first degree robbery and possession of oxycodone.

2

end her relationship with the defendant and move back to Mississippi. That night at about 10:30, Shadette heard gunshots at Wendy's house. Shadette walked to the house and found Wendy laying on her bedroom floor, unresponsive. She saw no weapons around Wendy. Shadette called 911. The police arrived and searched the house, but found no weapons.

Wendy had been shot in the head and killed by the defendant. After shooting Wendy, the defendant fled the house and made his way to his mother's house in Bogalusa. The next day, on April 27, the defendant called 911, and the police picked him up. The defendant was brought to the police station and interviewed by then Lieutenant Patrick Lyons and Detective David Miller, both with the Bogalusa Police Department. The videotaped interview was played for the jury. In the interview, the defendant said he shot Wendy in self-defense because she was hitting and slapping him and said she was going to kill him. Later in the interview, the defendant said that he was not trying to shoot Wendy, but was trying to shoot the floor to scare her.

After an extensive search for the gun the defendant used to kill Wendy, with information provided by the defendant, the police were unable to locate the gun. Wendy's toxicology report indicated that at the time of death, she had Valium, Xanax, marijuana, and methamphetamines in her system. The defendant did not testify at trial.

## ASSIGNMENT OF ERROR

In his sole assignment of error, the defendant argues the trial court erred in denying his motion for postverdict judgment of acquittal because the evidence was insufficient to support the manslaughter conviction. Specifically, the defendant contends the State failed to prove the homicide was not committed in self-defense.

A conviction based on insufficient evidence cannot stand as it violates Due Process. See U.S. Const. amend. XIV; La. Const. art. I, § 2. The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. **Jackson v. Virginia**, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). See La. Code Crim. P. art. 821(B); **State v. Ordodi**, 2006-0207 (La. 11/29/06), 946 So.2d 654, 660. The **Jackson** standard of review, incorporated in Article 821, is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, La. R.S. 15:438 provides that the factfinder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. **State v. Patorno**, 2001-2585 (La. App. 1 Cir. 6/21/02), 822 So.2d 141, 144.

Louisiana Revised Statutes 14:31 defines manslaughter in pertinent part as follows:

A. Manslaughter is:

(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed[.]

Sudden passion and heat of blood are not elements of the offense of manslaughter; rather, they are mitigatory factors in the nature of a defense, which demonstrate a degree of culpability less than that present when the homicide is committed without them. The State does not bear the burden of proving the presence or absence of these mitigatory factors. See **State v. Snyder**, 98-1078 (La. 4/14/99), 750 So.2d 832, 837-38. A defendant who establishes by a preponderance

4

of the evidence that he acted in sudden passion or heat of blood is entitled to a manslaughter verdict. In reviewing the claim, the court must determine if a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found the mitigatory factors were not established by a preponderance of the evidence. **State v. Morris**, 2009-0422 (La. App. 1 Cir. 9/11/09), 22 So.3d 1002, 1009.

In the instant case, the defendant does not deny that he fired the shot that killed Wendy. He contends, rather, that the homicide was justifiable because he acted in self-defense in firing the weapon. According to the defendant, whether it was the drugs in Wendy's system or "a natural aggression," she targeted him and advanced on him. The defendant avers that he told the police that when he shot Wendy, he was in fear for his life or receiving great bodily harm. (Defendant's brief, pp. 10-12).

Louisiana Revised Statutes 14:20(A) provides, in pertinent part:

A homicide is justifiable:

> (1) When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger.

> (2) When committed for the purpose of preventing a violent or forcible felony involving danger to life or of great bodily harm by one who reasonably believes that such an offense is about to be committed and that such action is necessary for its prevention. The circumstances must be sufficient to excite the fear of a reasonable person that there would be serious danger to his own life or person if he attempted to prevent the felony without the killing.

When a defendant in a homicide prosecution claims self-defense, the State must prove beyond a reasonable doubt that the homicide was not committed in self-defense. **State v. Bates**, 95-1513 (La. App. 1 Cir. 11/8/96), 683 So.2d 1370, 1375. Louisiana Revised Statutes 14:20(A)(1) provides that a homicide is justifiable when committed in self-defense by one who reasonably believes that he

5

is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save him from that danger. On appeal, the relevant inquiry is whether or not, after viewing the evidence in the light most favorable to the prosecution, a rational factfinder could have found beyond a reasonable doubt that the defendant did not act in self-defense. **State v. Williams**, 2001-0944 (La. App. 1 Cir. 12/28/01), 804 So.2d 932, 939, writ denied, 2002-0399 (La. 2/14/03), 836 So.2d 135; **State v. Fisher**, 95-0430 (La. App. 1 Cir. 5/10/96), 673 So.2d 721, 723, writ denied, 96-1412 (La. 11/1/96), 681 So.2d 1259.

The manslaughter verdict returned in this case indicates that the jury either outright rejected the defendant's self-defense claim or concluded that the homicide was not necessary to preserve the defendant's life. After a thorough review of the record, we find that any rational trier of fact could have found the evidence sufficient to support the manslaughter conviction.

In his interview with the detectives, the defendant initially indicated that the shooting was in self-defense and that Wendy had no business approaching him. The defendant stated that he and Wendy had been fighting or arguing outside and that at some point, he went inside and locked her out of her house. The defendant indicated that Wendy was out to get him and that "she had people." Later, when they were both inside, according to the defendant, Wendy was hitting him and telling him this was his last night. It was difficult for the detectives to get the defendant to elaborate on how the physical altercation unfolded and, as such, he simply repeated that she was hitting him. At one point in the interview, he stated Wendy hit him a couple of times and he backed up. When asked why, then, this would have caused him to shoot her in self-defense, the defendant responded because she had put him "through a lot of situations." When asked what he did with the gun, the defendant evaded and obfuscated to the point where it became

6

impossible to know the location of the gun. The defendant indicated the gun was a revolver and had three bullets in it. Later in the interview, the defendant shifted from his self-defense claim and stated that he was not trying to shoot Wendy; instead, he was trying to shoot at the floor. According to the defendant, he was by the table in the kitchen, and Wendy was in her bedroom (next to the kitchen), bent over and sweeping. The defendant took the gun off the table and shot at the floor just to scare her. When the defendant saw Wendy fall to the floor, he ran out the front door in his underwear and socks.

The physical and testimonial evidence established that Wendy was shot through the top of her head from a distance of at least three feet. The evidence also established that Wendy, at the time of her death, had very recent, small and circular bruises on her arms. Dr. Michael DeFatta, who performed the autopsy on Wendy, testified that this type of bruising was known as "fingerprint" or "fingertip" bruising, which was associated with domestic violence. And, on the day after the shooting, one of the officers who interviewed the defendant saw no apparent injuries to him indicative of a struggle, such as scratches, cuts, or bruises. The evidence, therefore, did not support the defendant's self-serving narrative about how and why he shot and killed Wendy. See **State v. Seals**, 2009-1089 (La. App. 5 Cir. 12/29/11), 83 So.3d 285, 309-10, writ denied, 2012-0293 (La. 10/26/12), 99 So.3d 53, cert. denied, 569 U.S. 1031, 133 S.Ct. 2796, 186 L.Ed.2d 863 (2013).

Herein, even if the jury believed the defendant's account of the events regarding Wendy hitting and threatening him, the jury could have reasonably found that the fatal force used by the defendant was not reasonable under the circumstances. There was no evidence that Wendy was armed with any weapon and, despite the fact that she allegedly struck him with her hands, the jury could have reasonably inferred that the defendant did not reasonably believe that it was

7

necessary to shoot and kill her because he was in imminent danger of losing his life or receiving great bodily harm. See La. R.S. 14:20(A)(1); **State v. Burton**, 2018-935 (La. App. 3 Cir. 6/5/19), 274 So.3d 122, 139-40; **State v. Eugene**, 2003-1128 (La. App. 5 Cir. 1/27/04), 866 So.2d 985, 992-93, writ denied, 2004-0515 (La. 1/14/05), 889 So.2d 263. In finding the defendant guilty, it is clear the jury rejected the claim of self-defense and concluded that the use of deadly force under the particular facts of this case was excessive and neither reasonable nor necessary. Moreover, the defendant's actions in failing to report the shooting and fleeing from the scene are not consistent with a theory of self-defense. See **State v. Emanuel-Dunn**, 2003-0550 (La. App. 1 Cir. 11/7/03), 868 So.2d 75, 80, writ denied, 2004-0339 (La. 6/25/04), 876 So.2d 829; **State v. Wallace**, 612 So.2d 183, 191 (La. App. 1 Cir. 1992), writ denied, 614 So.2d 1253 (La. 1993). Flight following an offense reasonably raises the inference of a "guilty mind." See **State v. Captville**, 448 So.2d 676, 680 n.4 (La. 1984).

The jury can accept or reject the testimony of any witness. To resolve conflicting testimony relative to factual matters, the jury must make credibility determinations and weigh the evidence. **State v. Eby**, 2017-1456 (La. App. 1st Cir. 4/6/16), 248 So.3d 420, 426, writ denied, 2018-0762 (La. 2/11/19), 263 So.3d 1153. See **State v. Mire**, 2014-2295 (La. 1/27/16), 269 So.3d 698, 700 (per curiam). The **Jackson** standard of review does not permit a reviewing court to substitute its own appreciation of the evidence for the factfinder's, assess the credibility of witnesses, or reweigh evidence. See **State v. McGhee**, 2015-2140 (La. 6/29/17), 223 So.3d 1136, 1137 (per curiam); **State v. Calloway**, 2007-2306 (La. 1/21/09), 1 So.3d 417, 422 (per curiam). Thus, in the absence of internal contradiction or irreconcilable conflict with the physical evidence, one witness's testimony, if believed by the jury, is sufficient to support a factual conclusion.

8

**State v. Higgins**, 2003-1980 (La. 4/1/05), 898 So.2d 1219, 1226, cert. denied, 546 U.S. 883, 126 S.Ct. 182, 163 L.Ed.2d 187 (2005). An appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the factfinder and thereby overturning a verdict based on an exculpatory hypothesis of innocence presented to, and rationally rejected by, the jury. **Eby**, 248 So.3d at 426-27.

When a case involves circumstantial evidence and the jury reasonably rejects the hypothesis of innocence presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. **State v. Moten**, 510 So.2d 55, 61 (La. App. 1 Cir.), writ denied, 514 So.2d 126 (La. 1987). The jury heard all of the testimony and viewed the evidence presented to it at trial and found the defendant guilty. In finding the defendant guilty, the jury clearly rejected the defense's theory of self-defense. See **Moten**, 510 So.2d at 61.

After a thorough review of the record, we find that the evidence supports the jury's guilty verdict. We are convinced that viewing the evidence in the light most favorable to the State, any rational trier of fact could have found beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that the defendant was guilty of the manslaughter of Wendy Hayes. See **Calloway**, 1 So.3d at 418.

We find the trial court did not err in denying the motion for postverdict judgment of acquittal. Accordingly, the assignment of error is without merit.

## REVIEW FOR ERROR

Pursuant to La. Code Crim. P. art. 920, this court routinely conducts a review for error discoverable by mere inspection of the pleadings and proceedings

9

and without inspection of the evidence. After a careful review of the record, we have found two sentencing errors.

Upon conviction for being a convicted felon in possession of a firearm, La. R.S. 14:95.1(B) mandates imposition of a fine of not less than $1,000.00 nor more than $5,000.00. The trial court did not impose a fine. Such failure to impose a fine, however, is not inherently prejudicial to the defendant.

Because the trial court's failure to impose the fine was not raised by the State, we are not required to take any action. As such, we decline to correct the illegally lenient sentence imposed on count 2. See **State v. Price**, 2005-2514 (La. App. 1 Cir. 12/28/06), 952 So.2d 112, 123-25 (en banc), writ denied, 2007-0130 (La. 2/22/08), 976 So.2d 1277. See also **State v. Zeno**, 2015-0763 (La. App. 1 Cir. 11/9/15), 2015 WL 6951581, at *6 (unpublished), writ denied, 2015-2233 (La. 12/16/16), 212 So.3d 1175.

As to the habitual offender resentencing on count 1, the minutes indicate that the sentence is at hard labor, but in the sentencing transcript, the trial court failed to provide that defendant's sentence be served with hard labor. Generally, when there is a discrepancy between the minutes and the transcript, the transcript must prevail. **State v. Lynch**, 441 So.2d 732, 734 (La. 1983). Any sentence imposed under the habitual offender statute shall be at hard labor. See La. R.S. 15:529.1(G). Further, La. C.C.P. art. 882(A) authorizes correction by the appellate court. We find that correction of this illegally lenient sentence does not involve the exercise of sentencing discretion and, as such, there is no reason why this court should not simply amend the sentence. See **State v. Ford**, 2017-0471 (La. App. 1 Cir. 9/27/17), 232 So.3d 576, 589, writ denied, 2017-1901 (La. 4/22/19), 268 So.3d 295. Accordingly, since a sentence at hard labor was the only sentence that could be imposed, we correct the defendant's sentence on the manslaughter conviction

10

following the habitual offender adjudication to reflect that it be served at hard labor. We remand to the trial court for correction of commitment order and for transmission of the amended record to the Department of Corrections. As amended, the sentence is affirmed.

## CONCLUSION

For the above reasons, the defendant's convictions and habitual offender adjudication are affirmed; the defendant's sentence as to count 2 is affirmed; and the defendant's sentence as to count 1 is affirmed as amended.

**CONVICTION AND SENTENCE AS TO COUNT 2 AFFIRMED; CONVICTION, HABITUAL OFFENDER ADJUDICATION, AND SENTENCE AS AMENDED AS TO COUNT 1 AFFIRMED. REMANDED FOR CORRECTION OF THE COMMITMENT ORDER AND FOR TRANSMISSION OF THE AMENDED RECORD TO THE DEPARTMENT OF CORRECTIONS.**

11