STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2022 KA 0995

STATE OF LOUISIANA

VERSUS

DEDRICK LABEE

Judgment Rendered:  **FEB 2 4 2023**

* * * * *

On Appeal from the
21st Judicial District Court
Parish of Tangipahoa, State of Louisiana
Trial Court No. 2002627

The Honorable Brenda Bedsole Ricks, Judge Presiding

* * * * *

Lieu T. Vo Clark                              Attorney for Defendant-Appellant,
Mandeville, Louisiana                         Dedrick Labee

Scott M. Perrilloux                           Attorneys for Appellee,
District Attorney                             State of Louisiana
Zachary Daniels
Assistant District Attorney
Livingston, Louisiana

* * * * *

BEFORE: GUIDRY, C.J., WOLFE, AND MILLER, JJ.

**WOLFE, J.**

The defendant, Dedrick Labee,[1] was charged by grand jury indictment with second degree murder (count 1), a violation of La. R.S. 14:30.1; armed robbery with the use of a firearm (count 2), a violation of La. R.S. 14:64; and obstruction of justice by tampering with evidence (count 3), a violation of La. R.S. 14:130.1. He pled not guilty and, following a jury trial, was found guilty as charged on counts 1 and 3. He was found not guilty on count 2, the armed robbery charge. He filed a motion for post-verdict judgment of acquittal, which was denied. For the second degree murder conviction, the trial court sentenced the defendant to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. For the obstruction of justice by tampering with evidence conviction, the trial court sentenced the defendant to forty-years imprisonment at hard labor. The sentences were ordered to run consecutively. The defendant now appeals, designating two assignments of error. For the following reasons, we affirm the convictions and sentences.

## FACTS

Kenneth Zahn owns Z Equipment (hereinafter "the shop") in Hammond that sells and repairs tractors and lawn equipment. His cousin, Wayne Bourliea, Jr., worked at the shop. According to the testimony of Barbara Labee, the defendant's ex-sister-in-law, and Kenneth, Barbara brought her mower to the shop for repairs on June 25, 2020. Some of the repairs were for blades and a tube for a front tire. Wayne did the repairs and prepared the work order ticket. Kenneth testified that Barbara paid a $45 deposit with an outstanding balance of $92.16. On July 17, 2020, Barbara paid the balance for the repairs and the mower was picked up. Behind his counter, Kenneth kept a gun inside a gun bag with the grip of the gun protruding outside of the bag.

---

[1] Throughout the appellate record the defendant is referred to by the name Dedrick L. Labee; however, the defendant's correct middle name is Charles.

2

Lawrence Labee, IV, the defendant's nephew, testified that on July 29, 2020, the day of the incident, he spoke to the defendant several times on the phone. Lawrence, who was in Texas at the time, indicated the defendant told him that on the morning of July 29, the defendant went to the shop to discuss a price discrepancy over the repairs to Barbara's mower. The defendant and the man behind the counter (Wayne) began arguing about the receipt. As the argument escalated, the defendant felt his life was in danger. The defendant produced a gun and shot Wayne several times. The defendant left the shop then returned shortly thereafter and took Wayne's cell phone. Lawrence informed the police of the shooting.[2]

Law enforcement officers learned that the defendant shot Wayne five times, including in the back of the head, killing him. Wayne's body was found behind the shop counter. The defendant had a permit to carry a gun. Wayne did not have any weapon in his hands nor on his person, and the gun that Kenneth kept behind the counter appeared to be partially out of the gun bag, but it was not clear if this is how the gun was always holstered. Also, the gun was loaded but never fired.

Other than the defendant, there was no eyewitness to the shooting. The defendant used his estranged wife's truck to drive to the shop. After the defendant shot and killed Wayne, he left the shop, then returned shortly thereafter. When he left the shop the second time, he dropped the truck off at his wife's place of employment, then called his nephew, Brennen Labee, to pick him up and bring him home. The defendant did not contact the police that day. The following day, however, the defendant communicated with Detective Wiley Foster, whom the defendant knew, and turned himself in. The gun the defendant used to kill Wayne was never found. No cash was taken from the register or safe in the shop.

---

[2] Customer Andrew Thomas was the first person to discover Wayne's body and called 911.

The defendant testified at trial, giving his version of events that led to the shooting of Wayne. The defendant went with Brennen to the shop in June of 2020 to have the tire and blades repaired on Barbara's mower. The defendant paid $15 for the tire repair,[3] but did not tell Barbara this. When Barbara got the mower back, the tire was still flat and the defendant noted on Barbara's receipt that she had been charged for the tire repair. The defendant went to the shop alone on July 20, 2020, to discuss the overcharge for repairs. The defendant approached the counter and told Wayne that he had a dispute with the receipt. The defendant showed Wayne the receipt. While Wayne agreed he had written that receipt, the defendant told Wayne there was another receipt. They began to argue. When the defendant told Wayne there was an extra charge on the receipt, Wayne got agitated and began shaking and banging on the counter. Wayne told the defendant he was a "lying [n----r.]" When the defendant told Wayne the tire was not even fixed, Wayne became even more irate and told the defendant, "I'm going to kill your black ass."

Wayne then made a motion and went down behind the counter. The defendant, having seen people who carry guns on their ankles, thought that Wayne was going for a gun around his ankle. The defendant retrieved a gun from a holster in his waistband and shot at Wayne several times. While shooting, the defendant could not see Wayne's face, but shot Wayne as he was bent over. The defendant then grabbed Wayne's phone and ran out the store. After driving away in the truck, the defendant returned to the shop and retrieved his holster that had fallen near the shop door. The defendant then dropped the truck off to his wife and called Brennen to pick him up.

---

[3] It is not clear if the defendant paid $15 or $27 for the tire repair.

4

## ASSIGNMENTS OF ERROR NOS. 1 AND 2

In these related assignments of error, the defendant argues, respectively, the evidence was insufficient to convict him of second degree murder because the State failed to prove he did not act in self-defense; and the trial court erred in denying his motion for post-verdict judgment of acquittal.

## STANDARD OF REVIEW

A conviction based on insufficient evidence cannot stand as it violates Due Process. See U.S. Const. amend. XIV; La. Const. art. 1, § 2. The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the State proved the essential elements of the crime beyond a reasonable doubt. **Jackson v. Virginia**, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). See La. Code Crim. P. art. 821(B); **State v. Ordodi**, 2006-0207 (La. 11/29/06), 946 So.2d 654, 660. The **Jackson** standard of review, incorporated in Article 821, is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, La. R.S. 15:438 provides that the factfinder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. **State v. Patorno**, 2001-2585 (La. App. 1st Cir. 6/21/02), 822 So.2d 141, 144.

## DISCUSSION

Second degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. La. R.S. 14:30.1(A)(1). Specific criminal intent is "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La. R.S. 14:10(1). Specific intent may be formed in an instant. **State v. Mickelson**, 2012-2539 (La. 9/3/14), 149 So.3d 178, 183. Because it is a state of mind, specific intent need not be proven as a fact, but may be

5

inferred from circumstances surrounding the offense and the defendant's actions. **Mickelson**, 149 So.3d at 182. It has long been recognized that specific intent to kill may be inferred from a defendant's act of pointing a gun and firing at a person. **State v. Reed**, 2014-1980 (La. 9/7/16), 200 So.3d 291, 309, cert. denied, __ U.S. __, 137 S.Ct. 787, 197 L.Ed.2d 258 (2017). See **State v. Eby**, 2017-1456 (La. App. 1st Cir. 4/6/16), 248 So.3d 420, 424, writ denied, 2018-0762 (La. 2/11/19), 263 So.3d 1153. Specific intent to kill may also be inferred from the extent and severity of the victim's injuries and the defendant's use of a deadly weapon to produce those injuries, which involved serious risk of death. **State v. Thomas**, 2019-0409 (La. App. 1st Cir. 10/25/19), 289 So.3d 1030, 1038.

In the instant case, the defendant does not deny that he shot and killed Wayne. He contends, rather, that the homicide was justifiable because he acted in self-defense. According to the defendant, when Wayne bent over behind counter, the defendant thought that Wayne was retrieving a gun.

Louisiana Revised Statutes 14:20 (A) provides, in pertinent part:

*A homicide is justifiable:*
    (1) When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger.

    (2) When committed for the purpose of preventing a violent or forcible felony involving danger to life or of great bodily harm by one who reasonably believes that such an offense is about to be committed and that such action is necessary for its prevention. The circumstances must be sufficient to excite the fear of a reasonable person that there would be serious danger to his own life or person if he attempted to prevent the felony without the killing.

When a defendant in a homicide prosecution claims self-defense, the State must prove beyond a reasonable doubt that the homicide was not committed in self-defense. **State v. Bates**, 95-1513 (La. App. 1st Cir. 11/8/96), 683 So.2d 1370, 1375. On appeal, the relevant inquiry is whether or not, after viewing the evidence in the light most favorable to the prosecution, a rational factfinder could have found

6

beyond a reasonable doubt that the defendant did not act in self-defense. **State v. Williams**, 2001-0944 (La. App. 1st Cir. 12/28/01), 804 So.2d 932, 939, writ denied, 2002-0399 (La. 2/14/03), 836 So.2d 135; **State v. Fisher**, 95-0430 (La. App. 1st Cir. 5/10/96), 673 So.2d 721, 723, writ denied, 96-1412 (La. 11/1/96), 681 So.2d 1259.

The defendant testified that as the argument escalated between him and Wayne in the shop, Wayne told him that he was going to kill him. The defendant further indicated that when Wayne bent over, the defendant thought Wayne was retrieving a gun holstered on his ankle; the defendant therefore leaned over the counter and shot Wayne several times. Based on the defendant's testimony, it appears he had been in the shop only twice – once when he spoke to Kenneth and the other time when he disputed the charge with Wayne. Accordingly, it seems the defendant did not know Wayne before meeting him on the day of the shooting and nothing in the defendant's own testimony suggested he was even aware there was a gun behind the counter. Moreover, after the shooting, the gun was found still holstered in the zip bag it had been originally placed in by the owner. Wayne had no weapon in his hand before or after he was shot.

Wayne's body was found face-down behind the counter. He was shot four times in the back of his body and once in the right side of his chest. The shots to the back of the body were to the right arm, upper back, lower back, and the back-right side of his head. All four of these wounds had stippling which, according to Dr. Michael Defatta who performed the autopsy, meant the shooting was at a relatively close range, or from one foot to about three-and-one-half feet away. The wound to the right side of Wayne's chest did not have stippling, which indicated the shooting was from a greater distance than the four shots to the back of the body. Accordingly, if the defendant's version of events is believed regarding Wayne's actions before he was shot, the jury could have rationally concluded that, from a distance, the

7

defendant first shot Wayne in the chest.[4] As the defendant closed in on Wayne to shoot him again, Wayne ducked behind the counter to avoid being shot again. While Wayne was crouched behind the counter (clearly not to get a gun strapped to his ankle), the defendant leaned over the counter and shot him several more times in the back of his body. According to the defendant, Wayne was bent down for twenty to thirty seconds. In any event, the defendant shot Wayne four times in the back of his body, including in the back of the head. Defendant's response to Wayne's alleged agitation and threat to kill the defendant, was excessive and unnecessary. See **State v. Mincey**, 2008-1315 (La. App. 3rd Cir. 6/3/09), 14 So.3d 613, 615-16.

Accordingly, the jury could have reasonably found that the fatal force used by the defendant was not reasonable under the circumstances. There was no evidence that Wayne was armed or had armed himself with any weapon and, as such, the defendant could not have reasonably believed it was necessary to shoot and kill Wayne because he was in imminent danger of losing his life or receiving great bodily harm. See La. R.S. 14:20(A)(1); **State v. Eugene**, 2003-1128 (La. App. 5th Cir. 1/27/04), 866 So.2d 985, 992-93, writ denied, 2004-0515 (La. 1/14/05), 889 So.2d 263. See also **State v. Ducre**, 596 So.2d 1372, 1379-80 (La. App. 1st Cir. 3/6/92), writ denied, 600 So.2d 637 (La. 1992). The instant defense did not produce any evidence or testimony at trial to corroborate or verify the self-serving statements of the defendant that he acted in self-defense. See **State v. Dyson**, 2011-0857 (La. App. 1st Cir. 3/23/12), 2012 WL 996968, *6-7 (unpublished); **State v. Seals**, 2009-1089 (La. App. 5th Cir. 12/29/11), 83 So.3d 285, 309-10, writ denied, 2012-0293 (La. 10/26/12), 99 So.3d 53, cert. denied, 569 U.S. 1031, 133 S.Ct. 2796, 186 L.Ed.2d 863 (2013).

---

[4] Dr. Defatta indicated Wayne was shot in the right side of his chest and that the bullet exited the upper portion of the left side of his chest. The trajectory of the bullet was from right to left.

8

In finding the defendant guilty, it is clear the jury rejected the claim of self-defense and concluded that the use of deadly force under the particular facts of this case was neither reasonable nor necessary. Moreover, the defendant's actions in failing to report the shooting and fleeing from the scene are not consistent with a theory of self-defense. See **State v. Emanuel-Dunn**, 2003-0550 (La. App. 1st Cir. 11/7/03), 868 So.2d 75, 80, writ denied, 2004-0339 (La. 6/25/04), 876 So.2d 829; **State v. Wallace**, 612 So.2d 183, 191 (La. App. 1st Cir. 1992), writ denied, 614 So.2d 1253 (La. 1993). Flight following an offense reasonably raises the inference of a "guilty mind." **State v. Captville**, 448 So.2d 676, 680 n.4 (La. 1984).

While the defendant did contact a police officer whom he knew the following day, the defendant did nothing moments after shooting Wayne to assist him or to call for help. Instead, the defendant fled the shop, then returned minutes later either to take Wayne's phone or to retrieve his gun holster he had dropped while leaving the shop. When asked why he went back to get his holster, the defendant responded because his fingerprints were on it. The defendant then drove away from the shop and tossed Wayne's phone out of his window. Further, the gun the defendant used to kill Wayne was never found. According to the defendant, he dismantled the gun, banged it on the concrete, and threw it in the woods.

The jury can accept or reject the testimony of any witness. To resolve conflicting testimony relative to factual matters, the jury must make credibility determinations and weigh the evidence. **Eby**, 248 So.3d at 426. See **State v. Mire**, 2014-2295 (La. 1/27/16), 269 So.3d 698, 700-01 (per curiam). The **Jackson** standard of review does not permit a reviewing court to substitute its own appreciation of the evidence for the factfinder's, assess the credibility of witnesses, or reweigh evidence. See **State v. McGhee**, 2015-2140 (La. 6/29/17), 223 So.3d 1136, 1137 (per curiam); **State v. Calloway**, 2007-2306 (La. 1/21/09), 1 So.3d 417, 422 (per curiam). Thus, in the absence of internal contradiction or irreconcilable

9

conflict with the physical evidence, one witness's testimony, if believed by the jury, is sufficient to support a factual conclusion. **State v. Higgins**, 2003-1980 (La. 4/1/05), 898 So.2d 1219, 1226, cert. denied, 546 U.S. 883, 126 S.Ct. 182, 163 L.Ed.2d 187 (2005). An appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the factfinder and thereby overturning a verdict based on an exculpatory hypothesis of innocence presented to, and rationally rejected by, the jury. **Eby**, 248 So.3d at 426-27.

When a case involves circumstantial evidence and the jury reasonably rejects the hypothesis of innocence presented by the defendant, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. **Captville**, 448 So.2d at 680. The jury heard all of the testimony and viewed the evidence presented to it at trial and found the defendant guilty. In finding the defendant guilty, the jury clearly rejected the defense's theory of self-defense.

After a thorough review of the record, we find that the evidence supports the jury's guilty verdict. We are convinced that viewing the evidence in the light most favorable to the State, any rational trier of fact could have found beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that the defendant was guilty of the second degree murder of Wayne Bourliea, Jr. See **Calloway**, 1 So.3d at 418.

We find the trial court did not err in denying the motion for post-verdict judgment of acquittal. Accordingly, these assignments of error are without merit.

**CONVICTIONS AND SENTENCES AFFIRMED.**